UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
LNB BANCORP, INC., :
: CASE NO. 1:09-CV-00643-AA
Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 3]
RICHARD M. OSBORNE, :
:
Defendants. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff LNB Bancorp ("LNB") moves for a temporary restraining order preventing Defendant Osborne from engaging in certain conduct directed at LNB's shareholders related to board of director elections. [Doc. 3-1 at 20-21.][1] Defendant Osborne has had an opportunity to respond. [Doc. 9-1.] This case is assigned to the Honorable Judge Ann Aldrich but this Court is adjudicating this motion pursuant to its responsibilities as Miscellaneous Judge for the Northern District of Ohio.

In moving for a temporary restraining order, Plaintiff LNB says that Defendant Osborne has

---

[1] Plaintiff asks this Court to enjoin Defendant Osborne from (1) Engaging in any solicitation of proxies or consents (whether or not relating to the election or removal of directors); (2) Seeking to advise, encourage or influence any person or entity with respect to the voting of any voting securities; (3) Initiating, proposing or otherwise soliciting shareholder of the Company for the approval of shareholder proposals whether made pursuant to Rule 14a-8 under the Exchange Act or otherwise; (4) Entering into any discussions, negotiations, agreements, arrangements or understanding with any third party with respect to any of the foregoing or to ma1ce or disclose any proposal to amend or terminate any of the provisions of Paragraph 9 of the Settlement Agreement; and (5) Disseminating his proposed Proxy to LNB shareholders. [Doc. 3-1 at 20-21.]

Case No. 1:09-cv-00643-AA
Gwin, J.

or is attempting to communicate with LNB's shareholders in violation of a settlement agreement reached in separate litigation. *See Osborne v. LNB Bancorp*, 1:08-cv-00473-SO (N.D. Ohio April 24, 2008) ("2008 Litigation"). In opposing the temporary restraining order, Osborne says that he is no longer bound by the standstill provision. [Doc. 9-1.]

For the reasons explained below, this Court **GRANTS** Plaintiff LNB Bancorp's motion for a temporary restraining order. This temporary restraining order will last for 7 days or until an order by Judge Aldrich lifting or modifying this Court's order.

### I. Background

The parties have a previous history of disputes related to communications to LNB's shareholders. In a 2008 lawsuit between the parties, Osborne sought to compel LNB to include certain language in its proxy materials. *See Osborne v. LNB Bancorp*, 1:08-cv-00473-SO (N.D. Ohio April 24, 2008) ("2008 Litigation"). The parties settled that claim.

In that settlement Osborne agreed to an extensive list of restrictions on his communication and conduct related to LNB. [Settlement Agreement Doc. 9-2 Ex. 1 at 4.] The parties refer to this list of prohibited communications as the "standstill provision." [Doc. 9-1 at 1.] This standstill provision is extensive. Pertinent to this motion, Osborne agreed that he would not "seek representation on the Company's board of directors or the removal of any member of the board . . . ." [Settlement Agreement, Doc. 9-2 Ex. 1 at 4.][2/]

In exchange for this standstill provision, LNB agreed to include on its board of directors two individuals designated by Osborne. The parties reached the agreement on April 18, 2008, and by

---

[2/] In additional restrictions, Osborne agreed not to "engage in an 'solicitation' . . . of proxies or consents (whether or not relating to the election or removal of directors"; "seek to advise, encourage or influence any person or entity with respect to the voting of any voting securities"; "initiate, propose, or otherwise 'solicit' . . . shareholders of the Company for the approval of shareholders proposals." [Settlement Agreement, Doc. 9-2 Ex. 1 at 4.]

-2-

Case No. 1:09-cv-00643-AA
Gwin, J.

its terms, the settlement agreement is to last for 18 months, or "until each of the persons designated to serve as directors of the Company by [Osborne] shall have resigned as directors." [Settlement Agreement, Doc. 9-2 Ex. 1 at 5.]

After the settlement, Osborne then designed two individuals to serve on the board. [Doc. 1-1 at 5.] The two individuals designated by Osborne were elected to the board. [Doc. 1-1 at 5.] On September 30, 2008, Osborne wrote a letter to LNB's board saying that he waived his right to designate two members of the board. [Doc. 9-10, Ex. 9 at 21.] Additionally, both of Osborne's designatees have "told [him] that they had verbally offered to resign from LNB's board." [Osborne Aff. Doc. 9-4, Ex. 3 at 1.] The two individuals Osborne had designated, however, were elected and still serve on the board of directors. While offering to resign, they have not submitted any letter of resignation. Osborne has pointed to no reason why, if they chose, the two designees could not resign.

LNB complains that Osborne is now attempting to join LNB's board and to replace the board's chairman. [Doc. 9-1 at 6.] Osborne admits in his briefings that he is "inten[ding] to launch a proxy contest," and admits that he has "mailed two letters to LNB's shareholders in advance of the anticipated proxy contest." [Doc. 9-1 at 7, 9.] In responding to the motion for a temporary restraining order, Osborne does not say that his conduct complies with the standstill provision. Instead, Osborne says that the standstill provision is no longer in force because of his waiver and because of the verbal offers of resignation. [Doc. 9-1 at 14-16.]

Below, this Court will describe the legal standard governing adjudication of a motion for a temporary restraining order and analyze whether Plaintiff LNB has shown that a temporary restraining order is justified.

-3-

Case No. 1:09-cv-00643-AA
Gwin, J.

## II. Temporary Restraining Order

*II.A.   Legal Standard Governing Temporary Restraining Order*

The Court applies the traditional four-part test to determine whether a temporary restraining order is appropriate.  The Court must consider whether: (1) there is a substantial likelihood of success on the merits, (2) the temporary restraining order is necessary to prevent irreparable injury, (3) the injury to the plaintiff outweighs any harm to the nonmovant, and (4) the temporary restraining order would serve the public interest.  *See, e.g., McPherson v. Michigan High School Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997).  A district court need not make specific findings on each factor, if fewer factors dispose of the issue.  *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 399 (6th Cir. 1997).

Although this motion is for a temporary restraining order, the motion is not ex parte, as Defendant Osborne has had an opportunity to respond.  *See Rios v. Blackwell*, 345 F. Supp. 2d 833, 835 (N.D. Ohio 2004) ("As long as there is notice to the other side of an opportunity to be heard, the standard for a preliminary injunction is the same as that for a temporary restraining order.")

*II.B.   Analysis*

Based on a careful analysis of the above-described factors, this Court holds that Plaintiff LNB has sufficiently demonstrated the necessity of a temporary restraining order.

First, there is a substantial likelihood that the standstill provision is still in force.  Osborne's unilateral waiver of his right to appoint two individuals to the board of directors is not effective when the two members he designated are still serving on the board. Additionally, the agreement says that it will last until the two designatees "shall have resigned."  The verbal offer of resignation does not meet this condition.  Accordingly, the settlement agreement is still in effect.

-4-

Case No. 1:09-cv-00643-AA
Gwin, J.

Osborne admits that he is seeking to become a member of the board and that he is seeking to remove a member of the board. [Doc. 9-1 at 7-9.] In the settlement agreement, Osborne agrees that he will not "seek representation on the Company's board of directors or the removal of any member of the board . . . ." [Settlement Agreement Doc. 9-2 Ex. 1 at 4.] Osborne's actions violate the settlement agreement.

Because the settlement agreement is still in force, and because Osborne's conduct violates the settlement agreement, there is a substantial likelihood that LNB will succeed on the merits.

Second, a temporary restraining order is necessary to prevent irreparable injury. The parties settlement agreement says that "irreparable injury to the other party would occur in the event any of the provisions of this Agreement were not performed in accordance with their specific terms." [Settlement Agreement Doc. 9-2 Ex. 1 at 5.] The parties agreed that each would be "entitled to specific enforcement of, and injunctive relief to prevent any violation of, the terms" of the agreement. *Id.* If Defendant Osborne is allowed to violate the agreement, Plaintiff's shareholders will receive misinformation related to voting. The parties have agreed that any failure to comply with the terms of the settlement agreement would constitute an irreparable injury and Defendant's Osborne's actions violate those terms. Accordingly, the temporary restraining order is necessary to prevent an irreparable injury.

Third, Osborne says that he will suffer an injury if an injunction is issued because he will have to wait an entire year to attempt to change the board of directors through elections. The Court acknowledges this argument, but finds that the argument is substantially undercut by the terms of the settlement agreement. In exchange for the right to designate two individuals to the board of directors, Osborne agreed not to seek representation on the board or to seek removal of a member

Case No. 1:09-cv-00643-AA
Gwin, J.

of the board. Osborne, in effect, bargained for this injury.

Fourth, to the extent that a public interest is implicated here, the Court holds that the interests of LNB's shareholders in orderly and efficient voting will be served by the temporary restraining order. LNB has demonstrated a likelihood of success on the merits and therefore, additional communications by Osborne to the shareholders would violate the settlement agreement or would be misleading. If Osborne continues to communicate with shareholders in a manner that breaches the settlement agreement, these communications will have to corrected in additional communications to shareholders.

Based on a careful consideration of the four factors identified above, this Court holds that a temporary restraining order is necessary.

### III. Conclusion

This Court this Court **GRANTS** Plaintiff LNB's motion for a temporary restraining order. This temporary restraining order will last for 7 days or until an order by Judge Aldrich lifting or modifying this Court's order.

Defendant Osborne is enjoined from

(1) Engaging in any solicitation of proxies or consents (whether or not relating to the election or removal of directors);
(2) Seeking to advise, encourage or influence any person or entity with respect to the voting of any voting securities;
(3) Initiating, proposing or otherwise soliciting shareholder of the Company for the approval of shareholder proposals whether made pursuant to Rule 14a-8 under the Exchange Act or otherwise;
(4) Entering into any discussions, negotiations, agreements, arrangements or understanding with any third party with respect to any of the foregoing or to ma1ce or disclose any proposal to amend or terminate any of the provisions of Paragraph 9 of the Settlement Agreement; and
(5) Disseminating his proposed Proxy to LNB shareholders.

Pursuant to Civil Rule 65(c), this restraining order shall become effective upon the Plaintiff's

Case No. 1:09-cv-00643-AA
Gwin, J.

posting of security in the amount of $50,000 for the payment of such costs and damages as may be incurred by any party who is later found to have been wrongfully restrained.

    IT IS SO ORDERED.


Dated: March 28, 2009                  s/ *James S. Gwin*
                                                       JAMES S. GWIN
                                                       UNITED STATES DISTRICT JUDGE