UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| LNB BANCORP, INC., | ) | Case No. 1:09-cv-00643 |
|  | ) |  |
| Plaintiff, | ) | JUDGE ANN ALDRICH |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| RICHARD M. OSBORNE, | ) |  |
|  | ) | MEMORANDUM AND ORDER |
| Defendant. | ) |  |
|  | ) |  |

This case is before the court on plaintiff LNB Bancorp's ("LNB") motion for a preliminary injunction. On March 24, 2009, LNB filed a motion for a temporary restraining order and preliminary injunctive relief which would prevent defendant Richard M. Osborne ("Osborne") from engaging in certain conduct that is allegedly prohibited by a settlement agreement signed in 2008 (the "Settlement Agreement"). Osborne filed a brief in opposition to LNB's motion, but the Honorable James Gwin granted LNB's motion for a temporary restraining order on March 28, 2009. Oral arguments were held on April 1, 2009. For the following reasons, this court grants LNB's motion for a preliminary injunction.

**I. BACKGROUND**

In his order granting the temporary restraining order, Judge Gwin succinctly summarized the undisputed facts in this case as follows:

> The parties have a previous history of disputes related to communications to LNB's shareholders. In a 2008 lawsuit between the parties, Osborne sought to compel LNB to include certain language in its proxy materials. *See Osborne v. LNB Bancorp*, 1:08-cv-00473-SO (N.D. Ohio April 24, 2008) ("2008 Litigation"). The parties settled that claim.
>
> In that settlement Osborne agreed to an extensive list of restrictions on his communication and conduct related to LNB. [Settlement Agreement Doc. 9-2 Ex. 1 at

4.]  The parties refer to this list of prohibited communications as the "standstill provision."  [Doc. 9-1 at 1.]  This standstill provision is extensive.  Pertinent to this motion, Osborne agreed that he would not "seek representation on the Company's board of directors or the removal of any member of the board. . . ."  [Settlement Agreement, Doc. 9-2 Ex. 1 at 4.]

In exchange for this standstill provision, LNB agreed to include on its board of directors two individuals designated by Osborne.  The parties reached the agreement on April 18, 2008, and by its terms, the settlement agreement is to last for 18 months, or "until each of the persons designated to serve as directors of the Company by [Osborne] shall have resigned as directors."  [Settlement Agreement, Doc. 9-2 Ex. 1 at 5.]

After the settlement, Osborne then designated two individuals to serve on the board.  [Doc. 1-1 at 5.]  The two individuals designated by Osborne were elected to the board.  [Doc. 1-1 at 5.]  On September 30, 2008, Osborne wrote a letter to LNB's board saying that he waived his right to designate two members of the board.  [Doc. 9-10, Ex. 9 at 21.]  Additionally, both of Osborne's designees have "told [him] that they had verbally offered to resign from LNB's board."  [Osborne Aff. Doc. 9-4, Ex. 3 at 1.]  The two individuals Osborne had designated, however, were elected and still serve on the board of directors.  While offering to resign, they have not submitted any letter of resignation.  Osborne has pointed to no reason why, if they chose, the two designees could not resign.

LNB complains that Osborne is now attempting to join LNB's board and to replace the board's chairman.  [Doc. 9-1 at 6.]  Osborne admits in his briefings that he is "inten[ding] to launch a proxy contest," and admits that he has "mailed two letters to LNB's shareholders in advance of the anticipated proxy contest." [Doc. 9-1 at 7, 9.]  In responding to the motion for a temporary restraining order, Osborne does not say that his conduct complies with the standstill provision. Instead, Osborne says that the standstill provision is no longer in force because of his waiver and because of the verbal offers of resignation.  [Doc. 9-1 at 14-16.]

In addition to those facts stated by Judge Gwin, this court also notes that the two designees signed certificates on September 30, 2008 that read as follows:

In connection with the waiver by Mr. Osborne . . . of the collective right to designate individuals to LNB's board of directors and as one of their former designees, I . . . hereby state that I do not have any agreement, express or implied, with . . . Mr. Osborne, nor do I have any other obligation to act on behalf of . . . Mr. Osborne, with respect to my responsibilities as a director of LNB Bancorp, Inc. . . . .

[Doc. 9-11 at 1-2.]

-2-

## II. STANDARD

"[T]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The Sixth Circuit has advised that "a preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it," *Overstreet v. Lexington-Fayette Urban Co. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted). The granting or denial of a preliminary injunction, however, is committed to the sound discretion of the trial court. *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982). When no material facts are in dispute, a district court is not required to hold an evidentiary hearing prior to ruling on a plaintiff's motion for a preliminary injunction. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007). The parties have agreed that an evidentiary hearing is not necessary in this matter because no material facts are in dispute.

When considering whether to grant a preliminary injunction, a district court must consider "(1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *McPherson v. Michigan High School Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (citing *Sandison v. Michigan High School Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995). A district court need not make specific findings on each factor if fewer factors dispose of the issue. *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 399 (6th Cir. 1997).

## III. DISCUSSION

Based on this court's analysis of the relevant factors, this court finds that LNB has met its burden in proving that the circumstances demand a preliminary injunction.

First, there is a substantial likelihood that LNB will succeed on the merits, as this court agrees with Judge Gwin's initial assessment that the standstill provision is still in force.  Osborne has unilaterally waived his right to appoint two individuals to the board of directors, and the two directors previously appointed by Osborne have verbally offered their resignation.  Nevertheless, the Settlement Agreement clearly indicates that the standstill provision is in effect for eighteen months or until both designees "shall have resigned."  Neither eighteen months have passed since the Settlement Agreement was signed, nor have both designees actually resigned.  Thus, the standstill provision is still in force.  Osborne's admission that he is seeking to become a member of the board indicates that he is violating the Settlement Agreement.

In his defense, Osborne argues that the purpose of the Settlement Agreement has been frustrated.  Under this theory, :

> [w]here, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 265.  "Frustration of purpose serves as a defense to a breach of contract claim only when the principal purpose of the contract has been frustrated." *U.S. v. Ellis*, 470 F.3d 275, 284 (6th Cir. 2006) (citations omitted).  "It is not enough that [the defendant] had in mind a specific object without which he would not have made the contract.  The object must be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense." *Karl Wendt Farm Equip. Co.*, 931 F.2d 1112, at 1119 (6th Cir. 1991) (quotation and citation omitted).

According to Osborne, the purpose of the Settlement Agreement was to designate two directors over whom he could exercise some degree of control and from whom he could gain information about the company.  This purpose, however, is neither stated nor suggested in the Settlement Agreement itself.  This court finds that, according to the terms of the Settlement Agreement, Osborne's "objective [was] to reduce the size of the board" to twelve directorships and increase its competence through the election of two "reasonably acceptable" board members who were designated by Osborne.  [Settlement Agreement, Doc. 9-2 Ex. 1 at 1, 6.]  This finding is supported by Osborne's statements in the original solicitation materials that led to the 2008 Litigation and resulted in the Settlement Agreement.  In his "Solicitation Statement to Call a Special Meeting of Shareholders," Osborne stated his objective as follows:

> LNB must formulate and implement a plan to improve its performance or consider strategic alternatives.  In our opinion, based on the bank's performance, the current board, with 13 members, has been unable to perform its role adequately.  We believe that to operate effectively and efficiently the size of LNB's board must be reduced to reflect the size of the company.  In addition, we don't believe directors should hide behind a classified board so that they are not accountable to shareholders every year.  We feel the shareholders should be given the opportunity to right-size and declassify the board, remove many of the current directors and replace them with individuals with significant banking experience who are sensitive to shareholder concerns.

[Case No. 1:08CV473 (N.D. Ohio 2008), Doc. 1-6 Ex. 5 at 2.]  Neither Osborne's waiver nor the designees' verbal resignations frustrated these purposes.  The board of directors is still in the process of being reduced in size in accordance with the provisions of ¶14 of the Settlement Agreement.  [Settlement Agreement, Doc. 9-2 Ex. 1 at 6.]  The designees still have significant banking experience and are likely sensitive to shareholder concerns, as evidenced by LNB's alleged refusal to accept their verbal resignations.  Thus, Osborne's principal purpose in entering the Settlement Agreement has not been frustrated.  Any designs that Osborne had of exercising control over, or collecting information from, his designees clearly constitutes a secondary purpose.  Thus, frustration of purpose is no defense

to Osborne's breach of the Settlement Agreement, and there is a substantial likelihood that LNB will succeed on the merits.

Second, a preliminary injunction will prevent irreparable injury.  In the Settlement Agreement, the parties agreed that "irreparable injury to the other party would occur in the event any of the provisions of this Agreement were not performed in accordance with their specific terms." [Settlement Agreement Doc. 9-2 Ex. 1 at 5.]  Moreover, the parties agreed that each would be "entitled to specific enforcement of, and injunctive relief to prevent any violation of the terms" of the Settlement Agreement. *Id.*  Osborne has argued that these terms are not relevant because he did not breach any provisions of the Settlement Agreement.  This court, however, has found otherwise and must conclude from the terms of the Settlement Agreement that LNB is entitled to injunctive relief to prevent irreparable injury.

Third, the injury to LNB would outweigh the injury to Osborne.  This court agrees with Judge Gwin's conclusion that Osborne's injury–having to wait another year before attempting to change the board of directors through elections–was an injury for which he bargained.  A sophisticated defendant like Osborne cannot now claim that his injury was not contemplated.

Finally, the public interest will be served by a preliminary injunction.  As Judge Gwin noted, the LNB shareholders have an interest in participating in orderly and efficient voting, without being sent improper and misleading communications from Osborne.  Osborne argues that a preliminary injunction denies the shareholders a right to vote and, therefore, a voice in LNB's management.  This court disagrees.  A preliminary injunction would only deny the shareholders a right to vote on proposals improperly placed before them by way of Osborne's breach of the Settlement Agreement.

In sum, this court finds that LNB has met its burden in establishing the necessity and propriety of a preliminary injunction.

**IV. CONCLUSION**

This court grants LNB's motion for a preliminary injunction.  The terms of the temporary restraining order are converted to a preliminary injunction.  Defendant Osborne is enjoined from the following activities prohibited by Paragraph 9 of the Settlement Agreement:

> (1) Engaging in any solicitation of proxies or consents (whether or not relating to the election or removal of directors);
> (2) Seeking to advise, encourage or influence any person or entity with respect to the voting of any voting securities;
> (3) Initiating, proposing or otherwise soliciting shareholders of the Company for the approval of shareholder proposals whether made pursuant to Rule 14a-8 under the Exchange Act or otherwise;
> (4) Entering into any discussions, negotiations, agreements, arrangements or understanding with any third party with respect to any of the foregoing or to make or disclose any proposal to amend or terminate any of the provisions of Paragraph 9 of the Settlement Agreement; and
> (5) Disseminating his proposed Proxy to LNB shareholders.

IT IS SO ORDERED.

                                        /s/ *Ann Aldrich*
                                        ANN ALDRICH
                                        UNITED STATES DISTRICT JUDGE

**Dated: April 3, 2009**