**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **LNB Bancorp, Inc.,** | ) | **CASE NO. 1: 09 CV 643** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Richard M. Osborne; Individually and as** | ) | |
| **Trustee for the Richard Osborne Trust,** | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendant.** | ) | |


This case concerns a "standstill" provision in a settlement agreement entered into

between Plaintiff LNB Bancorp, Inc. (LNB) and Defendant Richard M. Osborne (Osborne).

Pending before the Court are the parties' respective motions for summary judgment:

Defendant's Motion for Summary Judgment (Doc. 38) and Plaintiff's Motion for Partial

Summary Judgment (Doc. 39).  For the reasons stated below, LNB's motion for partial summary

judgment is granted in part, and defendant's motion for summary judgment is denied.

**Facts**

LNB is an Ohio corporation that operates as a holding company for Lorain National

Bank.  Lorain National Bank provides banking, mortgage, and brokerage services for individual

businesses.  Osborne is an investor who has invested in various banks and banking holding

companies, including LNB.  At the time this action was filed, Osborne and OsAir, Inc., an entity

of which Osborne is the majority shareholder, owed approximately 3.9% of the outstanding

shares of LNB.  Currently, Osborne owns 1,000 LNB shares.

　　　The parties have had a history of disputes related to communications to LNB's

shareholders.  In 2008, Osborne and another LNB shareholder, Steven A. Calabrese, commenced

a proxy contest related to LNB's March 20, 2008 annual shareholders' meeting.[1]  Osborne filed a

lawsuit in this district, *Richard M. Osborne v. LNB Bancorp, Inc.*, Case No. 1: 08 CV 473,

seeking to compel LNB to include certain language in its proxy materials.

　　　 While the litigation was pending, on April 18, 2008, Osborne, Calabrese, and AMG

Investments, LLC entered into a Settlement Agreement with LNB.  Paragraph 3 of the

Settlement Agreement provides that LNB would expand its Board of Directors to 15 and that the

settling parties (Osborne, Calabrese, and AMG Investments, LLC) would be entitled to designate

two members of LNB's Board.  (Settlement Agreement, ¶ 3.)  Paragraph 5 of the Agreement also

provides that the settling parties "shall be entitled to designate a substitute nominee" "[i]n the

event that any time prior to the scheduled expiration of their respective terms, one of the

individuals designated to serve as a director by [by the settling parties] is unable to serve as a

director, whether because of resignation, removal or otherwise."  (Settlement Agreement, ¶ 5.)

　　　In exchange for the right to designate two board members, Osborne agreed to dismiss all

---

[1]

　　　Osborne and Calabrese were managing members of AMG Investments, LLC, a limited
liability company whose principal purpose is to acquire, hold, sell, and otherwise invest in
securities and other instruments.  AMG Investments, LLC also owned shares in LNB.

2

of his claims in the 2008 lawsuit.  (Settlement Agreement, ¶ 10.)  In addition, Osborne agreed to

a "standstill" provision prohibiting him from engaging in certain conduct "for a period beginning

on the date [of the Settlement Agreement] and ending 18 months from the date [of the Settlement

Agreement]."  The standstill provision, set forth in paragraph 9(a) of the Agreement, provides

that Osborne would not:

> (i) seek representation on the Company's board of directors or the removal of any
> member of the board[;] (ii) propose, effect or seek to participate in (1) any
> acquisition of any assets of the Company or any of its subsidiaries, (B) tender or
> exchange offer or merger or other business combination involving the Company
> or any of its subsidiaries, or (C) any recapitalization, restructuring, liquidation,
> dissolution or other extraordinary transaction with respect to the Company or any
> of its subsidiaries; (iii) engage in any "solicitation" (as such term is used in the
> proxy rules of the SEC) of proxies or consents (whether or not related to the
> election or removal of directors) with respect to the Company; (iv) seek to advise,
> encourage or influence any person or entity with respect to the voting of
> securities; (v) initiate, propose or otherwise "solicit" (as such term is used in the
> proxy rules of the SEC) shareholders of the Company for the approval of
> shareholder proposals whether made pursuant to Rule 14a-8 under the Exchange
> Act or otherwise; or (vi) enter into any discusssions, negotiations, agreements,
> arrangements or understandings with any third party with respect to any of the
> foregoing, or to make or disclose any proposal to amend or terminate any of the
> provisions of this Section 9.

(Settlement Agreement, ¶ 9(a).)

Paragraph 9(c) of the Settlement Agreement further provides that Osborne "will not, at

any time during or after the 18 month period referenced in Section 9(a) . . . engage in any of the

conduct specified in [paragraph 9(a)] . . . unless and until each of the persons designated to serve

as directors of [LNB] by [Osborne] shall have resigned as directors."  (Settlement Agreement, ¶

9(c).)

In paragraph 12 of the Settlement Agreement the parties expressly acknowledged and

agreed "that irreparable injury to the other party would occur in the event any of the provisions

3

of this Agreement were not performed in accordance with their specific terms or were otherwise breached and that such injury would not be adequately compensable in damages."  The parties agreed that in such instance each party to the agreement (as the "Moving Party") "shall be entitled to specific enforcement of, and injunctive relief to prevent any violation of, the terms of [the Agreement]," and the other would "not take action, directly or indirectly, in opposition to the Moving Party seeking such relief on the grounds that any other remedy or relief is available at law or in equity."  (Settlement Agreement, ¶ 12.)

On April 18, 2008, in accordance with the terms of the Settlement Agreement, Osborne and Calabrese designated Daniel Merkel and Thomas Perciak to join LNB's Board of Directors. (Osborne Dep. at 86.)  Mr. Merkel and Mr. Perciak were subsequently elected to LNB's Board of Directors, and they remain members of LNB's Board of Directors today.  (Osborne Dep. at 93-94.)

Less than six months after designating Mr. Merkel and Mr. Perciak as board members, on September 30, 2008, Osborne and Calabrese sent a letter to LNB's Board of Directors stating that Osborne and Calabrese "hereby irrevocably waive [their] collective and/or individual right(s) to designate two individuals/nominees or successor nominees to LNB's board of directors pursuant to Sections 3 and 5 of the Settlement Agreement."  (Ex. 7.1 to Pltfs. Ex. C.) Osborne and Calabrese filed an Amended Schedule 13D with the Securities and Exchange Commission (SEC) on September 30, 2008, reporting this "waiver."  (Pltfs. Ex. C.)

Osborne states that, in or around November or December 2008, he had telephone conversations with Mr. Merkel and Mr. Perciak in which Mr. Merkel and Mr. Perciak both told him that they had verbally offered to resign from LNB's Board of Directors but that LNB did not

4

accept their resignations because of their positive contributions to LNB.  (Osborne Aff., ¶¶ 2, 3.)

On December 15, 2008, Osborne requested a shareholder list from LNB.  (Ex. 7.1 to Pltf.

Ex. D.)  On December 15, 2008, Osborne filed an Amended Schedule 13D with the SEC stating:

> On December 15, 2008, the Osborne Trust requested a shareholder list from LNB
> for the purpose of communicating with other shareholders regarding the affairs of
> LNB. . . .
>
> As explained in the Group's previous amendments to Schedule 13D filed with the
> Securities and Exchange Commission, Mr. Osborne, Mr. Calabrese and AMG
> designated Daniel G. Merkel and Thomas P. Perciak to the board of directors of
> LNB pursuant to the terms of the settlement agreement between LNB and Mr.
> Osborne, Mr. Calabrese and AMG dated April 18, 2008.  On September 30, 2008,
> Mr. Osborne, Mr. Calabrese and AMG, in a letter to LNB filed as Exhibit 7.1 to
> the Group's Amendment No. 9 to Schedule 13D dated September 30, 2008,
> irrevocably waived their right to designate nominees to LNB's board pursuant to
> the settlement agreement and confirmed that Mr. Merkel and Mr. Perciak were no
> longer designees of AMG, Mr. Osborne and Mr. Calabrese.  Subsequently, Mr.
> Osborne was informed that Mr. Merkel and Mr. Perciak offered to resign from
> LNB's board, which resignations were not accepted by LNB due to the positive
> contributions of Mr. Merkel and Mr. Perciak to LNB.
>
> As a result of the waiver of their right to designate nominees and Mr. Merkel's
> and Mr. Perciak's proffered (albeit not accepted) resignations, Mr. Osborne
> believes that the "standstill" restrictions contained in the settlement agreement
> have terminated pursuant to the terms of the agreement.

(Pltfs. Ex. C.)

On January 22, 2008, Osborne filed another Amended Schedule 13D with the SEC

indicating his intent to seek to replace LNB's Board Chairman James R. Herrick, to join the

board himself, and to conduct a proxy campaign to elect his nominees to LNB's Board at the

upcoming annual shareholders' meeting.  (Pltf. Ex. E.)[2]  Osborne also indicated that he "might

initiate other plans that would result in change to the present board of directors or management

---

[2]

The January 22, 2008 Amended Schedule 13D indicates that Mr. Calabrese would not
be a participant in Osborne's proxy contest.

5

of LNB."

On March 20, 2009, Osborne filed preliminary proxy materials with the SEC.  These materials indicate that Osborne intended to send LNB's shareholders proxy solicitation materials encouraging shareholders to vote for Osborne and Osborne's nominee, Thomas J. Smith, to LNB's Board of Directors at an upcoming shareholders' meeting.  (Pltf. Exs. F and G.)

LNB filed the Verified Complaint for Declaratory Judgment and Preliminary and Permanent Injunctive Relief in this case on March 24, 2009, alleging that Osborne's conduct violated the standstill provision of the Settlement Agreement.  Count I seeks a declaratory judgment that the standstill provision remains in force.  Count II seeks an order for specific performance ordering Osborne to abide by the terms of the standstill provision.  Count III seeks preliminary and permanent injunctions restraining Osborne from engaging in the conduct prohibited under the standstill provision.  Count IV alleges a claim for breach of contract arising from Osborne's breach of the Settlement Agreement.  Counts V and VI allege federal claims under the Securities and Exchange Act of 1934 (the Act).  Count V alleges that Osborne made false and misleading statements in his 13D filings with the SEC thereby violating Section 13(d) of the Act.  Count VI alleges Osborne made false and misleading statements in his proxy solicitation materials in violation of Section 14(a) of the Act.

LNB's motions for a temporary restraining order and preliminary injunction were granted on March 20, 2009 and April 3, 2009 by Judges Gwin (as miscellaneous judge) and Aldrich respectively.  Both judges found that the Settlement Agreement was still in effect and that LNB was likely to succeed on the merits of its claim that Osborne violated the standstill provision.  Osborne was preliminarily enjoined from engaging in the activities prohibited by paragraph 9 of

the Settlement Agreement, specifically: (1) engaging in any solicitation of proxies or consents;

(2) seeking to advise, encourage, or influence any person or entity with respect to the voting of

any securities; (3) initiating, proposing, or otherwise soliciting shareholders for the approval of

shareholder proposals; (4) entering into any discussions, negotiations, agreements, arrangements,

or understanding with any third party with respect to any of the foregoing or making or

disclosing any proposal to amend or terminate any of the provisions of Paragraph 9 of the

Settlement Agreement; and (5) disseminating his proposed Proxy to LNB shareholders.

   Osborne filed a motion to dissolve the preliminary injunction on February 15, 2010,

arguing that the terms of the Settlement Agreement limit the standstill provision to a period of 18

months from the date of the Settlement Agreement's execution and that, because 18 months had

expired, the standstill provision was no longer in effect.  Judge Aldrich issued a Memorandum

and Order on March 23, 2010, rejecting this argument and denying Osborne's motion to dissolve

the preliminary injunction.  Judge Aldrich ruled:

> The plain language of the Settlement Agreement clearly states that the standstill
> provision will remain in effect for at least eighteen months or until the two
> designees "shall have resigned," even if their resignations take place "after the 18
> month period."  Though eighteen months have elapsed since the Settlement
> Agreement was executed, Osborne has proffered no evidence showing that his
> two designees have resigned from LNB's board.  Consequently, the
> circumstances of this case have not changed, and Osborne's motion is denied.

(Doc. 40.)

   Osborne appealed the denial of his motion to the Sixth Circuit.  On July 25, 2011, the

Sixth Circuit affirmed Judge Aldrich's decision in a *per curiam* decision.  The Sixth Circuit

stated:

> After carefully reviewing the record below, the parties' briefs and the arguments
> contained therein, we are persuaded that the district court properly analyzed the issue in

this case and correctly denied Osborne's motion.  Rather than issue a detailed opinion, which would serve no useful purpose, we adopt the district court's reasoning set forth in order dated March 23, 2010.

(Doc. No.45.)

### Standard of Review

Federal Rule of Civil Procedure 56 governs summary judgment and provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled judgment as a matter of law."  The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion."  This can be done by citation to "materials in the record," including depositions, documents, affidavits, stipulations, and electronically stored information.  Fed. R. Civ. P. 56(c)(1)(A).  Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The 'mere possibility' of a factual dispute is not enough."  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1986).  In order to defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its position.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  In determining a motion for summary judgment, the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.  *Id.* at 255.

8

**Discussion**

**LNB's Motion**

LNB first argues in its motion that it is entitled to summary judgment on its breach of contract claim.  (LNB Mot. at 6.)  LNB asserts that there is no genuine issue of material fact that Osborne engaged in conduct that violates the standstill provision of the Settlement Agreement. Specifically, LNB asserts that less than twelve months after Osborne signed the Settlement Agreement, Osborne engaged in the following conduct in breach of the Settlement Agreement's standstill provision:

> Obtained a list of LNB shareholders for the expressed purpose of communicating with them regarding LNB's affairs;

> Filed documents with the SEC indicating his intent to replace LNB's Chairman of the Board and to conduct a proxy campaign to elect his nominees to LNB's board at the 2009 annual shareholders meeting and further stated that he might initiate other plans that would result in a change to the board or management of LNB;

> Filed with the SEC preliminary proxy solicitation materials that he intended to disseminate to LNB's shareholders (upon SEC approval) and that asked the shareholders to vote for Osborne and his nominee for the LNB board.

(LNB Mot. at 7.)

LNB asserts:  "Given that there is no genuine issue of material fact on the issue of breach, partial summary judgment should be entered in favor of LNB, and only the issue of damages should be submitted to the jury."  (LNB Mot. at 7-8.)

In his opposition brief, Osborne does not dispute that he engaged in the conduct LNB asserts or that engaging in such conduct constitutes a breach of the standstill provision.  But Osborne argues that the Court should deny LNB's motion on the contract claim because "a genuine issue of material fact exists as to whether [the] Standstill expired after the expiration of

9

18 months from the date of its execution."  (Osb. Opp. at 1-2.)  Osborne argues there is

"ambiguity" as to the duration of the standstill provision under paragraphs 9(a) and 9(c) of the

Settlement Agreement.  Osborne argues:

> LNB has argued that the "unless and until" language in paragraph 9(c) of the
> Settlement Agreement extends the Standstill until such time as Messrs. Merkel
> and Perciak resign from LNB's Board, conceivably in perpetuity.  That
> interpretation, however, ignores the 18-month duration of paragraph 9(a).  If
> the contract is interpreted as LNB argues, the 18-month duration of the Standstill in
> 9(a) would be a nullity . . . The more reasoned interpretation, reading paragraphs
> 9(a) and 9(c) together (as a court must), is that the Standstill was in place for 18
> months, unless Messrs. Merkel and Perciak resigned prior to its expiration, at
> which point the Standstill would terminate upon their earlier resignations.

(Opp. at 12.)  Thus, Osborne's position is the same one he urged before Judge Aldrich, namely,

that the standstill provision terminated 18 months after the Settlement Agreement was executed.

Osborne's argument is not persuasive.  Paragraph 9(c) of the Settlement Agreement

unambiguously provides that Osborne would not engage in any of the conduct prohibited in

paragraph 9(a) of the Agreement "at any time during **or after** the 18 month period referenced in

Section 9(a) [of the Settlement Agreement] . . . **unless and until** each of the persons designated

to serve as directors of the Company . . . **shall have resigned**."  (emphasis added.)  As Judge

Aldrich ruled (and the Sixth Circuit affirmed), this language clearly establishes that the standstill

provision remains in effect "for at least eighteen months or until the two designees 'shall have

resigned,' even if their resignations take place 'after the 18 month period.'"  Contrary to

Osborne's argument, the Settlement Agreement is not ambiguous as to whether the standstill

provision "expired" 18 months after the Agreement's execution.  As Judge Aldrich and the Sixth

Circuit have already determined, the plain and unambiguous language of the Settlement

Agreement demonstrates that the standstill provision remains in effect after the expiration of the

10

18 month period "unless and until" Osborne's designees "shall have resigned" from the Board of Directors.  There is no dispute that Mr. Merkel and Mr. Perciak remain on the Board.[3] Therefore, the standstill provision remains in effect.  No genuine issue of material fact exists as to whether the standstill provision "expired."

In that the parties do not dispute the existence of a valid contract (the Settlement Agreement) and that Osborne engaged in conduct he contractually agreed to refrain from in paragraph 9(a) of the Agreement, LNB's motion for partial summary judgment on its breach of contract claim against Osborne (Count IV) is granted.

LNB next argues that the Court should "issue a declaratory judgment on the duration of the standstill" and "a permanent injunction forbidding Osborne from engaging in the conduct prohibited in ¶9(a) until such time as neither Perciak nor Merkel serve on the LNB board." (LNB Mot. at 8, 13.)  The Court construes these requests as requests for partial summary judgment on Counts I and III of the Verified Complaint alleging claims for a declaratory judgment and a permanent injunction.

LNB seeks a permanent injunction "forbidding Osborne from engaging in the conduct set forth in ¶9(a) until such time as neither Perciak nor Merkel serve on the LNB board."  (LNB Mot. at 13.)

The parties agree that the standard for the issuance of a permanent injunction is essentially the same as the standard for a preliminary injunction, except that success on the merits rather than a "likelihood" of success must be established.  *U.S. v. Miami University*, 91

---

[3]

Further, as Judges Gwin and Aldrich both ruled, the fact that Osborne's designees made verbal offers to resign from the Board – but remain on the Board – does not establish that Osborne's designees "have resigned."

11

F.Supp. 2d 1132, 1147 (S.D. Ohio 2002). In determining whether to issue a permanent injunction, a court must consider: (1) whether the moving party has established success on the merits; (2) whether irreparable injury will occur if the injunction is not issued; (3) whether the injunction will have a harmful effect on third parties; and (4) whether the public interest would be served by the injunction. *Id.* In addition, an injunction generally should not issue if there is an adequate remedy at law. *Id.*

> LNB contends that it has established success on the merits, asserting that:

> [T]here is no question that the parties agreed that the Standstill is to continue until neither Merkel nor Perciak serve on the LNB board, even if that date is more than 18 months after the execution of the Settlement Agreement. As such, there is no genuine issue of material fact on this issue.

(LNB Mot. at 11.)

In addition, LNB contends the other factors necessary for an injunction are satisfied. Specifically, irreparable harm exists because LNB bargained in the Settlement Agreement for Osborne to refrain from the conduct prohibited by the standstill provision, and LNB will not receive the benefit of its bargain if Osborne is not enjoined from engaging in the contractually-prohibited conduct. The parties moreover expressly agreed in the Settlement Agreement that any breach of the Agreement would result in irreparable harm and that the injury from such breach "would not be adequately compensable in damages." (Settlement Agreement, ¶12.)

An injunction would not harm third parties, and Osborne cannot claim that he will be harmed from being required to comply with restrictions to which he contractually agreed.

Finally, the public interest will be served by an injunction because "there is no public interest in allowing Osborne to breach his duty pursuant to a valid settlement agreement." (LNB Mot. at 12.)

12

Osborne opposes LNB's request for a permanent injunction solely on the ground that "[a] genuine issue of material fact exists as to whether LNB has suffered irreparable harm."  (Osb. Opp. at 14.)  Osborne argues that contractual "irreparable harm" clauses, such as the parties' statement of irreparable harm in paragraph 12 of the Settlement Agreement, are not dispositive. In addition, Osborne contends LNB's assertion of irreparable harm is refuted by the fact that LNB has requested compensatory damages in the Verified Complaint.

However, LNB explains in its reply that the compensatory damages it seeks represent "losses that it has already incurred as the result of Osborne's flagrant breach of the Settlement Agreement." (Rep. at 3.)[4]  LNB contends these compensatory damages do not represent the total harm LNB will suffer if Osborne is not prevented from continuing to breach the terms of the Settlement Agreement.  LNB asserts:

> As set forth in the attached affidavit of Daniel Klimas, President of LNB, in the event that the Settlement Agreement were not enforced according to its terms, Osborne will have received the benefit of his bargain (*i.e.*, designation of two board members) without having fulfilled his part of the bargain, a situation that could not be remedied through an award of monetary damages. *See* Klimas Affidavit, attached as Exhibit I.  The harm to LNB would be undeniable.  LNB could be in the uncertain position of having to react (and potentially file suit) every time Osborne decides that he, rather than the LNB board, should dictate bank policy or that he is not happy with the performance of the board and wants himself or another designee appointed to the board (as he did in 2008 and 2009). And each time that Osborne does so, as in the past, LNB will be forced to devote considerable resources to the preparation of proxy or other materials that must be prepared and disseminated to its shareholders and the SEC. *See id.*  The potential uncertainty to banking regulators, the markets and LNB's shareholders cannot be predicted with certainty.  This [is] precisely the scenario LNB sought to avoid.

(LNB Rep. at 5.)

---

[4]

LNB asserts it "was forced to expend considerable funds for costs and fees, including attorneys fees, associated with the preparation of proxy materials that it should not have had to incur had Osborne complied with the Standstill."  (LNB Rep. at 3.)

13

LNB has established entitlement to a permanent injunction.  As discussed above, LNB has demonstrated success on the merits of its claim that Osborne breached the Settlement Agreement by engaging in conduct from which Osborne expressly agreed to refrain in the standstill provision.  Second, LNB's position is persuasive that irreparable harm exists in the absence of an injunction.  As LNB states, LNB expressly bargained in the Settlement Agreement for Osborne's agreement to refrain from engaging in the conduct stated in the standstill provision (so that LNB would not have to expend resources and effort to respond each time Osborne sought to disseminate proxy information to shareholders and/or urge shareholders to oppose the bank's actions in some way).  The parties expressly agreed in paragraph 12 of the Settlement Agreement that injunctive relief would be warranted in the event of a breach of the Agreement and that irreparable harm would exist.  Given the purpose and language of the Settlement Agreement, LNB would be irreparably harmed if the its request for a permanent injunction were denied, effectively leaving LNB in the position of having to sue Osborne for future breaches of the Settlement Agreement *after* such breaches occur.  This would defeat the purpose of the Settlement Agreement.  The Court finds that irreparable harm exists.

The third and fourth factors also weigh in favor an injunction.  As LNB argues (and Osborne does not dispute), an injunction as against Osborne will not have any harmful effect on third parties, and the "public interest" favors enforcing valid contractual settlement agreements.

In that LNB has demonstrated that a permanent injunction is warranted, and Osborne has failed to demonstrate that a genuine issue of fact exists,  LNB's motion for partial summary judgment on Count III seeking a permanent injunction barring Osborne from engaging in the conduct prohibited by the standstill provision in the Settlement Agreement unless and until each

14

of the persons Osborne designated to serve as directors of LNB shall have resigned is granted.

This leaves LNB's request in its motion for a declaratory judgment that the standstill provision remains in effect, and that Osborne is to refrain from the conduct outlined in the standstill provision, until such time as neither Mr. Merkel nor Mr. Perciak serves on LNB's Board.  In a footnote in its motion, LNB asserts:

> In Ohio, a declaratory judgment requires: (1) a real controversy between the parties; (2) a justiciable controversy; and (3) a situation where speedy relief is necessary to preserve the parties' rights.  *See NFC Acquisition, LLC v. Comerica Bank*, 640 F. Supp.2d 964, 970 (N.D. Ohio 2009).  Under Ohio's declaratory judgment statute "any person interested under a . . . written contract, or other writing constituting a contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations under it."  *Id.* (citing O.R.C. §2721.03).  Similarly, pursuant to the Federal Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  *See* 28 U.S.C. § 2201.

(LNB Mot. at 10, n. 3.)

Although Osborne does not oppose LNB's request for a declaratory judgment in his opposition brief, the Court does not find a separate declaratory judgment necessary in light of the Court's ruling on LNB's motion for partial summary judgment on the breach of contract claim. As set out above, the Court has determined that LNB is entitled to summary judgment on the breach of contract claim because the plain and unambiguous language of the Settlement Agreement demonstrates that the standstill provision is still in effect and remains in effect "unless and until" Osborne's designees "shall have resigned" from LNB's Board.  There is no need for a separate declaratory judgment declaring the meaning of the same contractual provision.

In accordance with the foregoing, LNB's motion for partial summary judgment is granted

15

in part as to Counts III and IV of LNB's Verified Complaint, but the motion is denied as to

LNB's request for a declaratory judgment.

**Osborne's Motion**

Osborne moves for summary judgment in his favor on all of LNB's alleged claims.

Osborne argues that LNB's complaint – which pleads "six different causes of action" – actually

"boils down to three claims:"

> (1) Breach of the Settlement Agreement, specifically the standstill; (2) violation of
> Section 13(d) of the Securities Exchange Act, by omitting from Mr. Osborne's
> 13D filings any mention of his alleged unsubstantiated or uncorroborated intent to
> merge LNB and PVF; and (3) violation of Section 14(a) of the Securities
> Exchange Act, by omitting from his preliminary proxy filings any mention of his
> alleged unsubstantiated or uncorroborated intent to merge LNB and PVF, and by
> stating his *belief* that the Standstill had terminated.

(Osb. Mot. at 13.)

Osborne argues that he is entitled to summary judgment on all of LNB's claims relating

to his alleged breach of the Settlement Agreement because "the Standstill has terminated";

therefore, "all claims related to it are moot."  (Osb. Mot. at 1, 15.)  Osborne's motion in this

regard is denied.  As discussed above, the standstill provision remains in effect under the

Settlement Agreement's unambiguous terms because there is no dispute that Osborne's

designees, Mr. Merkel and Mr. Perciak, remain on LNB's Board.  Osborne is not entitled to

summary judgment on any of LNB's claims relating to his breach of the Settlement Agreement.

Osborne next contends he is entitled to summary judgment on LNB's federal securities

claims for two reasons.  First, he asserts that LNB's claims under 13(d) and 14(a) of the Act are

insufficient because they are "premised entirely on speculation."  (Osb. Mot. at 15.)  He asserts

that he does not have "any present intent to merge LNB and PVF" and "[e]ven if [he] did, in the

past, have discussions regarding a possible merger between LNB and PVF, any 2008 discussions

[he had] regarding bank or saving and loan holding companies for which he does not currently

serve as a director or officer, are far too remote and speculative to be required to be disclosed

under 13(d) or 14(a)."  (Osb. Mot. at15.)

      Second, Osborne argues he did not violate Section 14(a) of the Act because he

subjectively "believes the Standstill to have been terminated"; therefore, the statement he made

to this effect in his SEC filings is not false and misleading.  (*Id*. at 16.)[5]

      Osborne's arguments are insufficient to demonstrate that he is entitled to summary

judgment on LNB's federal securities claims.  Osborne argues that his 2008 statements regarding

LNB and PVF are "too remote and speculative to be required to be disclosed under 13(d) or

14(a)."  However, as LNB points out in its opposition brief, LNB claims that Osborne's 13D

filings are false and misleading and violate section 13(d) because:  (1) they fail to disclose that

Osborne held a significant equity interest in and served as a director for a bank (PVF) that

Osborne desired to be merged with LNB; (2) they fail to provide information as to why Osborne

and Calabrese ceased to be acting as a "group" as defined by the SEC; and (3) they falsely

indicate to LNB shareholders that Osborne has authority to issue proxy statements and be

---

[5]

      Although Osborne does not completely set out the applicable law in his motion, LNB has summarized the requirements of section 13(d) and 14(a) of the Act.  Section 13(d)(1) and the regulations promulgated thereunder require that any person who acquires a beneficial ownership of any equity security of a class which is registered pursuant to Section 12 of the Act to file with the SEC a report on a Schedule 13D disclosing various information, including any plans or proposals which the reporting persons may have which relate to or would result in "an extraordinary corporate transaction," such as a merger, reorganization, or liquidation involving the issuer.  Section 14(a) of the Act, and the rules and regulations promulgated thereunder, govern proxy solicitations and provide that no solicitation may be made by means of any communication that is false or misleading or omits to state a material fact.

appointed to LNB's board when Osborne does not have such authority under the terms of the Settlement Agreement.  Osborne's argument that his 2008 statements are "remote and speculative" does not establish that no genuine issues of material fact exist as to LNB's alleged section 13(d) claim. Genuine issues of material fact exist as to whether Osborne had an obligation and failed to disclose an "extraordinary corporate transaction" and other information in his 13D filings.

Similarly, a genuine issue of material fact exists as to whether Osborne made false statements in preliminary proxy solicitation materials in violation of section 14(a) of the Act. Osborne contends he is entitled to summary judgment because he believes that he is no longer bound by paragraph 9 of the Settlement Agreement.  However, genuine issue of fact exist on this point.  Genuine issues of fact exist as to whether Osborne believe that the standstill terminated merely because Mr. Merkel and Mr. Perciak verbally "offered" to resign from LNB's Board or whether (as LNB suggests) Osborne knowingly stated this belief in his SEC filings falsely in order to mislead LNB shareholders as to his authority.

In sum, Osborne has failed to demonstrate that he is entitled to summary judgment on any of LNB's claims.  Osborne's motion for summary judgment is denied.

**Conclusion**

For the reasons stated above, LNB's motion for partial summary judgment is granted in part as to Counts III and IV of the Verified Complaint.  Osborne is hereby permanently enjoined from engaging in the conduct specified in the standstill provision of the Settlement Agreement unless and until each of the persons Osborne designated to serve as directors on LNB's Board "shall have resigned."  LNB's motion is denied to the extent it seeks a declaratory judgment.

18

Osborne's motion for summary judgment is denied.

IT IS SO ORDERED.


                                        /s/Patricia A. Gaughan
                                        PATRICIA A. GAUGHAN
Date:   11/30/11                        United States District Judge